UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ————————————————————— x | | |
| SCOTT KAIRALLA, Individually and on Behalf of All Others Similarly Situated, | : : : | Civil Action No. 07-7417 |
| Plaintiff, | : : : | CLASS ACTION |
| vs. | : : : | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| LIMELIGHT NETWORKS, INC., JEFFREY W. LUNSFORD, MICHAEL M. GORDON, WILLIAM H. RINEHART, MATTHEW HALE, NATHAN F. RACIBORSKI, WALTER D. AMARAL, JOSEPH H. GLEBERMAN, FREDRIC W. HARMAN, MARK A. JUNG, ALLAN M. KAPLAN, PETER J. PERRONE, DAVID C. PETERSCHMIDT, GARY VALENZUELA, GOLDMAN SACHS & CO., JEFFERIES & COMPANY, INC., MORGAN STANLEY & CO. INCORPORATED, PIPER JAFFRAY & CO. and FRIEDMAN, BILLINGS, RAMSEY & CO., INC., | : : : : : : : : : : : : : : : : | |
| Defendants. | : : | |
| ————————————————————— x | | DEMAND FOR JURY TRIAL |

## NATURE OF THE ACTION

1.      This is a class action on behalf of all persons or entities who acquired the common stock of Limelight Networks, Inc. ("Limelight" or the "Company") pursuant to the Company's false and misleading Registration Statement and Prospectus (collectively, the "Registration Statement") issued in connection with its June 8, 2007 initial public offering ("IPO"), seeking to pursue remedies under the Securities Act of 1933 ("1933 Act").

2.      Limelight provides content delivery network ("CDN") services for delivering live and on-demand digital media online in the United States, Europe, and Asia Pacific.  The Company digitally delivers content for traditional and emerging media companies, or content providers, including businesses operating in the television, music, radio, newspaper, magazine, movie, videogame, and software industries.  Limelight's CDN enables content providers to provide their end-users with rich media content, including video, music, games, software, and social media.  The Company also supports both download and streaming delivery in various formats, including Adobe Flash, MP3 audio, QuickTime, RealNetworks RealPlayer, and Windows Media.

3.      On June 15, 2007, Limelight completed its IPO of 18.4 million shares at $15 per share, including 14.9 million shares sold by Limelight (including over-allotment) and 3.5 million shares sold by stockholders for net proceeds of $207.8 million to the the Company and $48.8 million to the selling shareholders – mostly officers and directors of the Company – pursuant to the Registration Statement.  The Registration Statement failed to disclose that Limelight was even then suffering a decrease in its growth rate and customers and was experiencing pricing issues – which would adversely affect second quarter and third quarter 2007 results.

4.      Due to defendants' positive, but false statements, by August 8, 2007, when the market closed, Limelight stock closed at $14.80 per share.

5.    Then on August 9, 2007, Limelight issued a press release announcing its second

quarter 2007 results.  The press release stated in part:

> Limelight Networks, a leading content delivery network (CDN) for digital media, today reported financial results for the second quarter ended June 30, 2007.
>
> For the second quarter of 2007, Limelight Networks reported GAAP revenue of $21.2 million and non-GAAP revenue of $24.7 million, representing growth of 43% and 67%, respectively, over the $14.8 million of revenue the company reported in second quarter of 2006. The company reported a second quarter GAAP loss per diluted share of $(0.23) and non-GAAP earnings per diluted share of $0.00. Non-GAAP Adjusted EBITDA for the quarter was $4.4 million compared to $5.7 million for the second quarter of 2006. A reconciliation of GAAP to non-GAAP financials is provided in the table below.
>
> "We achieved numerous milestones and executed well on our plan to establish Limelight Networks as the premier content delivery and enablement partner for businesses desiring to deliver rich media assets such as video, music, games, software and social media over the Internet," commented Jeff Lunsford, chairman and chief executive officer. Operating highlights in the quarter include:
>
> - capitalizing the business with over $200 million in growth capital raised in an IPO, provisioning us with over $187 million in cash and marketable securities on June 30, 2007 after paying down debt;
>
> - achieving new business bookings more than double those achieved in the second quarter of 2006;
>
> - the addition of 149 net new customers in the quarter, bringing total customers up to 876 on June 30, 2007;
>
> - the hiring of 14 enterprise sales reps into a growing worldwide sales force, bringing total quota-carry representatives up to 58 at the end of June; and
>
> - an increase of total network egress to a capacity of approximately 1.4 terabits per second, positioning the company as a scale leader in servicing the high-growth and high-traffic publishers' Internet content.
>
> Limelight Networks also disclosed an expanded 5-year individual customer arrangement pursuant to which Limelight Networks will provide custom CDN consulting services and will continue its content delivery services. Additionally, Limelight and the customer agreed to cross-license certain technologies, including certain components of Limelight's CDN software. This contract is a multi-element arrangement, which required a change, beginning in the second quarter, in how

Limelight accounts for revenue from consulting, as well as the company's standard content delivery services delivered to this customer. Because of the nature of the contract with this customer and the company's consequent revenue recognition, the company has determined that it will present both GAAP and non-GAAP revenue and earnings amounts to help illustrate the impact of this contract.

"We believe Limelight Networks is well positioned," commented Lunsford, "to grow our business as broadband Internet access continues to propagate around the world, as content delivery shifts from analog to digital networks and as consumers' content consumption preferences shift to the online channel."

**Guidance**

For the third quarter of 2007, the company anticipates:

- GAAP revenue to be in the range of $27 to $28 million

- Non-GAAP revenue to be in the range of $25.5 to $26.5 million

- GAAP loss per diluted share to be in a range of ($0.10) to ($0.08)

- Non-GAAP diluted loss per diluted share to be in a range of ($0.06).to ($0.04)

- Non-GAAP Adjusted EBITDA in the range $1 to $2 million

For the full year of 2007, the company anticipates:

- GAAP revenue to be in the range of $101 to $103 million

- Non-GAAP revenue to be in the range of $103 to $105 million

- GAAP (loss) per diluted share to be in a range of ($0.54) to ($0.51)

- Non-GAAP earnings per diluted share to be in a range of $0.00 to $0.02

- Non-GAAP Adjusted EBITDA in the range of $16 to $19 million

6.      On this news, Limelight's stock price collapsed in one day from $14.80 per share on August 8, 2007, to open at $10.50 per share on August 9, 2007, before dropping further to $8.60 per share, and closing at $8.99 per share, on volume of 7.5 million shares (over 7 times the average previous trading volume for the stock).  Previously, the Company's stock traded as high as $23.82 per share.

- 3 -

7.    The true facts which were omitted from the Registration Statement were as follows:

(a)    The Company was then experiencing a drop-off in customer demand which would adversely affect revenues in the second and third quarter of 2007.

(b)    Pricing pressures were adversely affecting the Company.

(c)    The Company was not well-situated as compared to its competitors as represented in the Registration Statement.

(d)    The significant sequential quarterly revenue growth shown in the Registration Statement was not continuing and would lead to a flattening or even a drop-off in future revenues.

(e)    The Company was experiencing a disastrous second quarter which would result in disappointing 2007 results.

## JURISDICTION AND VENUE

8.    The claims asserted herein arise under and pursuant to §§11 and 15 of the 1933 Act [15 U.S.C. §§77k and 77o].

9.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the 1933 Act.

10.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because the defendants maintain an office in this District and many of the acts and practices complained of herein occurred in substantial part in this District.  The named underwriters promoting this offering conduct business in this District.

11.    In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

12.     Plaintiff Scott Kairalla acquired the common stock of Limelight pursuant or traceable to the IPO, as set forth in the accompanying certification, and has been damaged thereby.

13.     Defendant Limelight is headquartered in Tempe, Arizona.  Its stock trades in an efficient market on the NASDAQ.

14.     Defendant Jeffrey W. Lunsford ("Lunsford") has been Chairman of the Board and Chief Executive Officer of Limelight since November 2006.  Lunsford signed or authorized the signing of the false and misleading Registration Statement.

15.     Defendant Michael M. Gordon ("Gordon") is co-founder of Limelight.  Gordon has been Chief Strategy Officer of the Company since January 2005.  Defendant Gordon sold 400,651 shares in the IPO at the offering price of $15.00 per share for gross proceeds of $6 million.

16.     Defendant William H. Rinehart ("Rinehart") is co-founder of Limelight.  Rinehart was President and CEO of the Company from June 2001 to October 2006, and was a director from August 2003 through October 2006.  Defendant Rinehart sold 504,790 shares in the IPO at the offering price of $15.00 per share for gross proceeds of $7.5 million.

17.     Defendant Matthew Hale ("Hale") has been Chief Financial Officer ("CFO") of Limelight since December 2006.  Hale signed or authorized the signing of the false and misleading Registration Statement.

18.     Defendant Nathan F. Raciborski ("Raciborski") is co-founder of Limelight and has been Chief Technical Officer since June 2001 and a director since July 2006 .  Raciborski signed or authorized the signing of the false and misleading Registration Statement.  Defendant Raciborski sold 803,041 shares in the IPO at the offering price of $15.00 per share for gross proceeds of $12 million.

19.    Defendant Walter D. Amaral ("Amaral") has been a director of Limelight since May 2007. Amaral signed or authorized the signing of the false and misleading Registration Statement.

20.    Defendant Joseph H. Gleberman ("Gleberman") has been a director of Limelight since September 2006. Gleberman signed or authorized the signing of the false and misleading Registration Statement.

21.    Defendant Fredric W. Harman ("Harman") has been a director of Limelight since September 2006. Harman signed or authorized the signing of the false and misleading Registration Statement.

22.    Defendant Mark A. Jung ("Jung") has been a director of Limelight since April 2007. Jung signed or authorized the signing of the false and misleading Registration Statement.

23.    Defendant Allan M. Kaplan ("Kaplan") is co-founder of Limelight. Kaplan has been a director of the Company since August 2003 and previously served as Chairman of the Board through November 2006. Kaplan signed or authorized the signing of the false and misleading Registration Statement. Defendant Kaplan sold 620,742 shares in the IPO at the offering price of $15.00 per share for gross proceeds of nearly $9.3 million.

24.    Defendant Peter J. Perrone ("Perrone") has been a director of Limelight since July 2006. Perrone signed or authorized the signing of the false and misleading Registration Statement.

25.    Defendant David C. Peterschmidt ("Peterschmidt") has been a director of Limelight since February 2007. Peterschmidt signed or authorized the signing of the false and misleading Registration Statement.

26.    Defendant Gary Valenzuela ("Valenzuela") has been a director of Limelight since February 2007. Valenzuela signed or authorized the signing of the false and misleading Registration Statement.

27.     The defendants referenced above in ¶¶14-26 are referred to herein as the "Individual Defendants."

28.     Certain of the Individual Defendants sold shares of their Limelight stock at $15.00 per share in the IPO as follows:

| DEFENDANT | SHARES SOLD | GROSS PROCEEDS |
|---|---|---|
| RACIBORSKI | 803,041 | $12,045,615 |
| RINEHART | 504,790 | $7,571,850 |
| KAPLAN | 620,742 | $9,311,130 |
| GORDON | 400,651 | $6,009,765 |
| TOTAL | 2,329,224 | $34,938,360 |

29.     Defendant Goldman Sachs & Co. ("Goldman Sachs") is global leader in mergers and acquisitions advice and securities underwriting. Goldman Sachs offers a wide range of investment banking and asset management services to corporate and government clients, as well as institutional and individual investors. Goldman Sachs acted as financial advisor to Limelight in connection with the IPO, helping to draft and disseminate the offering documents. Goldman Sachs agreed to purchase 39.6 million shares of Limelight in July 2006 and was thus anxious to see the Company's IPO accomplished prior to the truth about its flattening or declining sales leaking into the market.

30.     Defendant Jefferies & Company, Inc. ("Jefferies") is a full-service global investment bank and institutional securities firm focused on growing and middle-market companies and their investors. Jefferies acted as financial advisor to Limelight in connection with the IPO, helping to draft and disseminate the offering documents.

31.     Defendant Morgan Stanley & Co. Incorporated ("Morgan Stanley") is a global financial services firm that provides its products and services to customers, including corporations, governments, financial institutions and individuals, and acts as an investment bank and retail broker provider. Morgan Stanley acted as financial advisor to Limelight in connection with the IPO, helping to draft and disseminate the offering documents.

32.     Defendant Piper Jaffray & Co. ("Piper Jaffray") is an international middle-market investment bank and institutional securities firm.  Piper Jaffray acted as financial advisor to Limelight in connection with the IPO, helping to draft and disseminate the offering documents.

33.     Defendant Friedman, Billings, Ramsey & Co., Inc. ("FBR") is a full service investment banking, institutional sales, trading and research and asset management firm.  FBR acted as financial advisor to Limelight in connection with the IPO, helping to draft and disseminate the offering documents.

34.     Defendants Goldman Sachs, Jefferies, Morgan Stanley, Piper Jaffray and FBR are collectively referred to as the "Underwriter Defendants."  The Underwriter Defendants received underwriting fees of $19.3 million for their roles in carrying out the IPO.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired shares of Limelight common stock traceable to the Company's false and misleading Registration Statement for its IPO and who were damaged thereby (the "Class").  Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

36.     The members of the Class are so numerous that joinder of all members is impracticable.  Limelight stock was actively traded on the NASDAQ.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Limelight or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice

similar to that customarily used in securities class actions.  Limelight and the selling shareholders sold 18.4 million shares of stock in the IPO.

37.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

38.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

39.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the 1933 Act was violated by defendants' acts as alleged herein;

(b)     whether statements made by defendants to the investing public in the Registration Statement misrepresented material facts about the business, operations and management of Limelight; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

40.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## BACKGROUND

41.     Limelight provides CDN services for delivering live and on-demand digital media online in the United States, Europe, and Asia Pacific.  The Company digitally delivers content for

traditional and emerging media companies, or content providers, including businesses operating in the television, music, radio, newspaper, magazine, movie, videogame, and software industries. Limelight's CDN enables content providers to provide their end-users with rich media content, including video, music, games, software, and social media. The Company also supports both download and streaming delivery in various formats, including Adobe Flash, MP3 audio, QuickTime, RealNetworks RealPlayer, and Windows Media. The Company's value-added services include a Web-based customer portal that provides management information reports and a download manager that simplifies the downloading process for the end-user. Limelight also offers custom services to address customers' non-standard delivery needs.

## THE FALSE AND DEFECTIVE REGISTRATION STATEMENT AND PROSPECTUS

42. On or about June 6, 2007, Limelight filed with the SEC a Form S-1/A (the "IPO Registration Statement") for the IPO.

43. On or about June 8, 2007, the Company filed its Prospectus for the IPO (the "IPO Prospectus"), which forms part of the IPO Registration Statement. The IPO was completed on June 15, 2007, and at least 18.4 million shares of Limelight common stock were sold to the public at $15 per share, 14.9 million shares by the Company (including the over-allotment) and an additional 3.5 million shares by certain selling shareholders (most by the Individual Defendants), raising $276 million in gross proceeds for the Company, the selling shareholders and the Underwriter Defendants.

44. The IPO Registration Statement and IPO Prospectus were negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.

45.    The IPO Registration Statement and IPO Prospectus represented the following about

Limelight's business and operations:

> Our solution enables content providers to provide their end-users with high-quality experiences across any digital media type, content library size or audience scale without expending the capital and developing the expertise needed to build and manage their own networks. Our CDN solution delivers the following benefits to our customers:

> **High-Quality User Experience**

> We enable users to receive their requested content such as movies, television shows, games, songs and software downloads in a timely manner and to enjoy a high-quality media experience. We accomplish this, in part, by delivering content from servers that can be closer to users than a content provider's own servers, and by delivering more than half of our content volume directly to a user's access network, bypassing much of the congestion typically experienced in the public Internet. We also operate a dedicated high-speed (10 gigabits per second) backbone that enables us to move content quickly between locations on our network.

> \*        \*        \*

> We have observed a number of trends in our business that are likely to have an impact on our financial condition and results of operations in the foreseeable future. Traffic on our network has grown in the last three years. This traffic growth is the result of growth in the number of new contracts, as well as growth in the traffic delivered to existing customers. Our near-exclusive focus is on providing CDN services, which we consider to be our sole industry segment.

> Historically, we have derived a small portion of our revenue from outside of the United States. Our international revenue has grown recently, and we expect this trend to continue as we focus on our strategy of expanding our network and customer base internationally.

46.    The IPO Prospectus reported positive results for quarterly revenues:

**THREE MONTHS ENDED
MARCH 31,**

|  | 2006 | 2007 (IN THOUSANDS) | INCREASE (DECREASE) | PERCENT CHANGE |
|---|---|---|---|---|
| Revenue | $10,838 | $22,876 | $12,038 | 111% |

The increase in total revenue for the three months ended March 31, 2007 as compared to the three months ended March 31, 2006 was due to an increase in

- 11 -

revenue from the sale of our recurring CDN services. The increase in CDN services revenue was primarily attributable to increases in the number of customers under recurring revenue contracts, as well as increases in traffic and additional services sold to new and existing customers.

47.    The IPO Prospectus showed eight straight quarters of sequential quarterly revenue growth:

### THREE MONTHS ENDED

|  | Mar 31, 2005 | Jun 30, 2005 | Sep 30, 2005 | Dec 31 2005 | Mar 31, 2006 | Jun 30, 2006 | Sep 30, 2006 | Dec 31, 2006 | Mar 31, 2007 |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  | (in thousands) |  |  |  |  |
| Revenue | $3,593 | $4,475 | $5,638 | $7,597 | $10,838 | $14,841 | $17,057 | $21,607 | $22,876 |

48.    In discussing stock option pricing for employees, the IPO Prospectus represented that sales were continuing to grow even after March 31, 2007:

Subsequent to March 31, 2007, we continued to experience positive trends in new customer acquisitions and increased network usage by existing customers. As a result, we have increased the price at which we have granted options subsequent to March 31, 2007 to prices ranging up to the initial public offering price of $15.00 per share.

49.    The IPO Prospectus emphasized the growth of not only Limelight's business, but also the growth of the market, all while concealing the lack of growth in Limelight's business:

Our comprehensive solution delivers content providers a high-quality, highly scalable, highly reliable offering at a low cost. As of May 2007, approximately 800 customers are using Limelight Networks to deliver the high-quality media experiences that their consumers seek online.

We are rapidly growing our content delivery capacity and expanding our sales and service capabilities in advance of what we believe will be a dramatic and sustained surge in Internet traffic. The environment in which we are scaling our business is characterized by three macro trends, all of which reinforce the need for content delivery networks:

- consumption and distribution of rich media content are expanding rapidly;

- older alternatives for delivering rich media content over basic Internet connections are not scaling well; and

- a new set of technical, management and economic requirements have emerged for content providers to meet the needs of demanding consumers of rich media content.

\*       \*       \*

Multiple forces have created, and continue to drive, a substantial unmet need to rapidly and efficiently deliver large files and broadcast-quality media to large audiences over the Internet. These forces include the following:

- **Proliferation of broadband Internet connections**.  According to a report from Strategy Analytics, nearly half of all North American households had broadband Internet access in 2006, with broadband Internet penetration expected to reach 73% by 2010. In addition, IDC estimates that the average speed of downstream access for a broadband connection, the speed at which an end-user accesses media files, doubled from the third quarter of 2004 to the same quarter of 2006 ("Market Analysis: U.S. Broadband Services 2006-2010 Forecast," IDC, September 2006). The proliferation of broadband Internet connections has provided an increasing number of users with the capability to access rich media content efficiently.

- **Consumption of media via the Internet is rivaling consumption via other media channels**.  The proliferation of broadband Internet has fundamentally changed the way that consumers access and interact with media content. According to a recent survey by Forrester Research, Inc., consumers between the ages of 18-26 in U.S. online households spend 12.2 hours per week using the Internet, compared to 10.6 hours per week watching television ("State of the Consumers and Technology: Benchmark 2006," Forrester Research, Inc., July 2006). In addition, eMarketer estimates that at the end of 2006, nearly 60% of all Internet users regularly watched videos online. That number is expected to climb to 80% by the end of 2010.

- **Consumers desire on-demand access to a broad range of personalized media content**.  Through technologies like Internet search, personal digital video recorders, video-on-demand and social media platforms, consumers are increasingly accustomed to immediate, on-demand access to media content, including videos, music and photos provided by media or content providers or by users themselves.

- **Proliferation of Internet-connected devices**.  The proliferation of devices that are capable of connecting to the Internet, such as MP3 players, mobile phones and videogame consoles, has given users even more control and flexibility over how and where they access and use media content from the Internet.

\*     \*     \*

The capital, expertise, and other managerial effort necessary to meet these requirements can be challenging. As demand for the delivery of rich media content increases, these challenges will become increasingly difficult to meet. We believe, therefore, that there is a significant opportunity for an outsourced Internet content delivery network optimized for the delivery of rich media content.

50.     The IPO Prospectus also highlighted Limelight's competitive strengths, suggesting its

growth would continue:

While many of our current competitors, as well as a number of our potential competitors, have longer operating histories, greater name recognition and greater financial, technical and marketing resources than we do, we believe that we compete favorably on the basis of these factors, taken as a whole. In particular, we believe that our service offerings compete strongly in the areas of performance and scalability, which are two of the most critical elements involved in the delivery of rich media content over the Internet, and in the area of cost efficiency.

51.     Both the IPO Registration Statement and IPO Prospectus were prepared and filed

after the end of the first quarter of 2007. Nonetheless, neither the IPO Registration Statement nor the

IPO Prospectus disclosed that the Company would suffer a loss in the second quarter of 2007 or that

the Company anticipated that it may also suffer a loss in the third quarter of 2007.

52.     On August 8, 2007, Limelight's stock closed at $14.80 per share.

53.     Then, on August 9, 2007, Limelight issued a press release announcing its second

quarter 2007 results. The press release stated in part:

Limelight Networks, a leading content delivery network (CDN) for digital media, today reported financial results for the second quarter ended June 30, 2007.

For the second quarter of 2007, Limelight Networks reported GAAP revenue of $21.2 million and non-GAAP revenue of $24.7 million, representing growth of 43% and 67%, respectively, over the $14.8 million of revenue the company reported in second quarter of 2006. The company reported a second quarter GAAP loss per diluted share of $(0.23) and non-GAAP earnings per diluted share of $0.00. Non-GAAP Adjusted EBITDA for the quarter was $4.4 million compared to $5.7 million for the second quarter of 2006. A reconciliation of GAAP to non-GAAP financials is provided in the table below.

"We achieved numerous milestones and executed well on our plan to establish Limelight Networks as the premier content delivery and enablement partner for businesses desiring to deliver rich media assets such as video, music, games, software and social media over the Internet," commented Jeff Lunsford, chairman and chief executive officer. Operating highlights in the quarter include:

- capitalizing the business with over $200 million in growth capital raised in an IPO, provisioning us with over $187 million in cash and marketable securities on June 30, 2007 after paying down debt;

- achieving new business bookings more than double those achieved in the second quarter of 2006;

- the addition of 149 net new customers in the quarter, bringing total customers up to 876 on June 30, 2007;

- the hiring of 14 enterprise sales reps into a growing worldwide sales force, bringing total quota-carry representatives up to 58 at the end of June; and

- an increase of total network egress to a capacity of approximately 1.4 terabits per second, positioning the company as a scale leader in servicing the high-growth and high-traffic publishers' Internet content.

Limelight Networks also disclosed an expanded 5-year individual customer arrangement pursuant to which Limelight Networks will provide custom CDN consulting services and will continue its content delivery services. Additionally, Limelight and the customer agreed to cross-license certain technologies, including certain components of Limelight's CDN software. This contract is a multi-element arrangement, which required a change, beginning in the second quarter, in how Limelight accounts for revenue from consulting, as well as the company's standard content delivery services delivered to this customer. Because of the nature of the contract with this customer and the company's consequent revenue recognition, the company has determined that it will present both GAAP and non-GAAP revenue and earnings amounts to help illustrate the impact of this contract.

"We believe Limelight Networks is well positioned," commented Lunsford, "to grow our business as broadband Internet access continues to propagate around the world, as content delivery shifts from analog to digital networks and as consumers' content consumption preferences shift to the online channel."

**Guidance**

For the third quarter of 2007, the company anticipates:

- GAAP revenue to be in the range of $27 to $28 million

- Non-GAAP revenue to be in the range of $25.5 to $26.5 million

- GAAP loss per diluted share to be in a range of ($0.10) to ($0.08)

- Non-GAAP diluted loss per diluted share to be in a range of ($0.06).to ($0.04)

- Non-GAAP Adjusted EBITDA in the range $1 to $2 million

For the full year of 2007, the company anticipates:

- GAAP revenue to be in the range of $101 to $103 million

- Non-GAAP revenue to be in the range of $103 to $105 million

- GAAP (loss) per diluted share to be in a range of ($0.54) to ($0.51)

- Non-GAAP earnings per diluted share to be in a range of $0.00 to $0.02

- Non-GAAP Adjusted EBITDA in the range of $16 to $19 million

54.    Thus, Limelight reported GAAP revenue of just $21.2 million – lower than in the first quarter.

55.    On this news, Limelight's stock price collapsed to as low as $8.60 per share on August 9, 2007, before closing at $8.99 per share.

56.    The true facts which were omitted from the Registration Statement were as follows:

(a)    The Company was then experiencing a drop-off in customer demand which would adversely affect revenues in the second and third quarter of 2007.

(b)    Pricing pressures were adversely affecting the Company.

(c)    The Company was not well-situated as compared to its competitors as represented in the Registration Statement.

(d)    The significant sequential quarterly revenue growth shown in the Registration Statement was not continuing and would lead to a flattening or even drop-off in future revenues.

(e)    The Company was experiencing a disastrous second quarter which would result in disappointing 2007 results.

## COUNT I

### For Violations of Section 11 of the 1933 Act
### Against All Defendants

57.    Plaintiff repeats and realleges each and every allegation contained above.

58.    This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

59.    The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

60.    Limelight is the registrant for the IPO.  The defendants named herein were responsible for the contents and dissemination of the Registration Statement.

61.    As issuer of the shares, Limelight is strictly liable to plaintiff and the Class for the misstatements and omissions.

62.    None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

63.    By reasons of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

64.    Plaintiff acquired Limelight shares pursuant to the Registration Statement for the IPO.

65.    Plaintiff and the Class have sustained damages.  The value of Limelight common stock has declined substantially subsequent to and due to defendants' violations.

66.     At the time of their purchases of Limelight shares, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to August 9, 2007.  Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this complaint.  Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this complaint.

### COUNT II

**For Violations of Section 15 of the 1933 Act
Against the Individual Defendants Except Rinehart**

67.     Plaintiff repeats and realleges each and every allegation contained above.

68.     This Count is brought pursuant to §15 of the 1933 Act against the Individual Defendants, except Rinehart.

69.     Each of the Individual Defendants was a control person of Limelight by virtue of his position as a director and/or senior officer of Limelight.  The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Limelight.

70.     Each of the Individual Defendants was a culpable participant in the violations of §11 of the 1933 Act alleged in the Count above, based on their having signed or authorized the signing of the Registration Statement and/or having otherwise participated in the process which allowed the IPO to be successfully completed.

- 18 -

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.    Awarding rescission or a rescissory measure of damages; and

E.    Such equitable/injunctive or other relief as deemed appropriate by the Court.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury

DATED:  August 21, 2007            LERACH COUGHLIN STOIA GELLER
                                     RUDMAN & ROBBINS LLP
                                   SAMUEL H. RUDMAN
                                   DAVID A. ROSENFELD


                                   _____
                                       /s/ Samuel H. Rudman
                                       SAMUEL H. RUDMAN

                                   58 South Service Road, Suite 200
                                   Melville, NY  11747
                                   Telephone:  631/367-7100
                                   631/367-1173 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
DAVID C. WALTON
CATHERINE J. KOWALEWSKI
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

SCOTT KAIRALLA ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

Acquisitions:

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 06/20/07 | 200 shares | $19.70 |
| | | |
| | | |

Sales:

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| | | |
| | | |
| | | |

5.    Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

*Kairalla v. Amgen Inc., et al.*, No. CV-07-2536-PSG-PLA (C.D. Cal.)

6.    The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 20 day of August , 2007.

SCOTT KAIRALLA

- 2 -

LIMELIGHT